Barry SANDROW

v.

UNITED STATES of America.

Civ. A. No. 91–0760.

United States District Court,
E.D. Pennsylvania.

Aug. 27, 1993.

Scott Marshall Pollack, Law Offices of Scott Marshall Pollack, Jenkintown, PA, for plaintiff.

Charles H. Keen, U.S. Dept. of Justice, Tax Div., Washington, DC, for defendant.

## MEMORANDUM

WALDMAN, District Judge.

### I. Introduction

This is a tax refund case. Plaintiff sued to recover payments he made to satisfy tax deficiencies of 5727 Bar Inc. of which plaintiff was the sole shareholder. After a trial, a jury found that plaintiff was entitled to a refund of $12,907.30 plus interest. Presently before the court is defendant's Motion for Judgment as a Matter of Law or, in the alternative, Motion for New Trial.

### II. Legal Standard

Judgment as a matter of law should be entered only when taking the evidence and all inferences justifiable therefrom in a light most favorable to the prevailing party, it appears that a rational jury could not have found in favor of that party. *Bhaya v. Westinghouse Electric Corp.*, 832 F.2d 258, 259 (3d Cir.1987), *cert. denied*, 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989); *Aloe Coal Co. v. Clark Equipment Co.*, 816 F.2d 110, 113 (3d Cir.), *cert. denied*, 484 U.S. 853, 108 S.Ct. 156, 98 L.Ed.2d 111 (1987).

A new trial is appropriate only when the verdict is contrary to the great weight of the evidence or errors at trial produce a result inconsistent with substantial justice. *Roebuck v. Drexel University*, 852 F.2d 715, 735–36 (3d Cir.1988). A new trial for the reason that a verdict is against the weight of the evidence should be granted only where permitting the verdict as rendered to stand would result in a miscarriage of justice. *See Klein. v. Hollings*, 992 F.2d 1285, 1290 (3d Cir.1993).

### III. *The Evidence*

Plaintiff owned and operated a Philadelphia pub under the name 5727 Bar Inc. In 1983, he sold the business to a new operator and held the shares and a mortgage on the property as collateral for the installment purchase payments agreed upon. When the purchaser defaulted on her payment obligations, plaintiff reacquired title to the business in 1986.

Plaintiff received a letter from the Internal Revenue Service ("IRS") dated March 10, 1987 addressed to plaintiff at his home address, which stated that the IRS had not received full payment of plaintiff's tax liability for 5727 Bar and that it would "assess a penalty against you, as a person required to collect, account for, and pay over withheld taxes for the above corporation.... If we do not hear from you within 30 days, we will have to assess the penalty and bill you."[1]

Plaintiff also received an undated letter from the IRS to 5727 Bar Inc. care of plaintiff at his home address, which stated in bold print that it was a "Final Notice (Notice of Intention to Levy) Reply Within 10 Days to Avoid Enforcement Action and Additional Penalties" and that this "letter is your notice that we intend to levy upon your property or rights to property." Failure to pay the amount due would result in

> "enforcement action without any further notice to you. We may file a notice of Federal tax lien which is public notice to your creditors that a tax lien exists against your property. We may serve a notice of levy on your employer for salary or wages you are due, and may levy on any bank accounts, receivables, commissions, or other kinds of income you have. We may also seize your property or rights to property, such as automobiles, and sell it to satisfy your tax liability."

Plaintiff thereafter paid the IRS $6,000 to satisfy FICA and withholding tax deficiencies of 5727 Bar. Plaintiff testified that he did so because he believed that he could be held responsible for the corporate tax deficiencies and that his personal property could be seized to satisfy them.

Plaintiff received a third letter from the IRS to 5727 Bar Inc. dated July 29, 1987 with a ten-day notice and text identical to that of the prior Final Notice (Notice of Intention to Levy) letter. The IRS was now demanding an additional $6,907.30 for further tax deficiencies of 5727 Bar. Plaintiff paid the additional amount. He testified that he did so to protect his personal credit and property.

According to IRS records, the only formal tax assessments were made in the name of the corporation. Mr. Houston, the IRS revenue officer assigned to this matter, acknowledged on cross-examination that if plaintiff had not responded, then the IRS would have formally assessed him for the amounts claimed and would have proceeded to collect from him. Shortly after the second payment was tendered, Mr. Houston provided plaintiff with a letter of acknowledgment that all outstanding tax liabilities of "5727 Bar Inc. or Mr. Barry Sandrow as a responsible party for 5727 Bar Inc." had been satisfied.

After plaintiff became convinced that he was not a responsible party under the Code and sued for a refund, the IRS took the position that plaintiff indeed was not a responsible party and thus was not a "taxpayer" but a "volunteer" with no standing to sue.

The jury found that plaintiff paid the assessed taxes only because he believed that he was personally liable for doing so and that this belief was reasonable under the circumstances presented.

### IV. *Discussion*

■ The government first argues that in the absence of legal duress or coercion, plaintiff merely made "voluntary" payments of the tax liability of a third party and has no standing to sue for a refund.[2]

Title 28 U.S.C. § 1346(a)(1) provides:

---

1. *See* 26 U.S.C. § 6672.

2. Plaintiff did not argue that he was legally coerced into making payment and did not seek relief on that basis. Defendant's alternative request for a new trial on this issue is misplaced.

(a) The district courts shall have original jurisdiction, concurrent with the United States Claims Court, of

(1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been excessive or in any manner wrongfully collected under the internal-revenue laws ...

The government relies on cases which hold that § 1346(a)(1) applies only to "taxpayers" who overpay their own taxes, and thus a person who pays taxes owed by another is effectively a volunteer or donor without standing to seek a refund.[3] The typical plaintiff in these cases held to lack standing under this theory is a third party who comprehends that he is not liable for a tax but decides to satisfy the obligation of another to achieve some net economic benefit, or someone who is not even directly involved in the payment transaction. *See, e.g., Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. U.S. Internal Revenue Service,* 845 F.2d 139 (7th Cir.1988) (purchaser wishing to retain trucks advances funds to vendor to pay federal excise tax owed by manufacturer); *Snodgrass v. U.S.,* 834 F.2d 537 (5th Cir.1987) (wife seeks refund of tax owed and paid by husband from common funds to release lien so joint property could be sold—distinguishing her from one who is "threatened ... with personal liability" or "seizure of property"); *Busse v. U.S.,* 542 F.2d 421 (7th Cir.1976) (plaintiff pays tax owed by former spouse to remove lien on property awarded her by divorce court—distinguishing her from refund claimant "believing himself to be at least potentially liable" for tax); *First National Bank of Emlenton v. U.S.,* 265 F.2d 297 (3d Cir.1959) (bank sues for proceeds of tax sale by IRS of third party's property on which bank held mortgage).[4]

In cases highly analogous to the instant one courts have held that similarly situated plaintiffs had standing to maintain refund actions. To read a statute literally is not to construe it broadly. Section 1346(a)(1) allows one from whom taxes are erroneously collected to sue for a refund. *Martin v. U.S.,* 895 F.2d 992, 994 (4th Cir.1990). Taxes collected from a person who does not owe them are "erroneously collected." *Id.* In *Martin* the plaintiff was held to have standing to sue to recover a payment for business taxes owed by and assessed against her former spouse to secure clear title to property she acquired in a divorce settlement.

In *David v. U.S.,* 551 F.Supp. 850 (C.D.Cal.1982) the plaintiff sued for a refund of sums he paid for FICA taxes assessed against a corporation of which he was an officer and majority shareholder. Plaintiff made these payments because he erroneously "assumed that since he was an officer of the corporation he would be personally liable." The government argued that plaintiff lacked standing because he was not a taxpayer since he was not assessed or actually liable for these taxes. The Court found that plaintiff was not a volunteer or donor when he paid taxes "he was under the impression that he was personally liable for" and held that since he was not actually liable, in accepting his payment the IRS "wrongfully collected the taxes." *Id.,* at 853–54.

In *Brodey v. U.S.,* 788 F.Supp. 44 (D.Mass. 1991) a corporate officer and shareholder sued for a refund of her payment of taxes assessed against the corporation for which "she erroneously assumed that she was personally liable." The Court held that she had standing to do so under § 1346(a)(1). The Court determined that a plaintiff enjoys the status of a "taxpayer" for purposes of § 1346(a)(1) if: (1) he believed the taxes he was paying were taxes he owed personally; (2) his belief in his personal liability was reasonable under all the circumstances; and, (3) he paid the taxes with no intention that the payment be a donation for the benefit of a third party. *Id.,* at 57. *See also Schoenherr v. U.S.,* 566 F.Supp. 1365, 1367 (E.D.Wisc.1983) (applying reasonable belief test to plaintiff who paid taxes assessed against corporation of which he was receiver

---

**3.** The government never filed a motion to dismiss for lack of jurisdiction.

**4.** Clearly, one who has not paid a tax cannot maintain a refund action.

for which he erroneously believed he was personally responsible).[5]

The court appreciates that it is the mission of the IRS to obtain and retain for the treasury every dollar possible. Ultimately, however, the touchstone for the dealings of the government with our citizens should be fairness and reasonableness. When the government seeks to collect delinquent corporate taxes from someone it believes or assumes may be liable as a "responsible person" therefor, it is not fair or reasonable for the government to accept payment and thereafter declare that the payor was not a responsible person but a non-taxpayer volunteer without standing to seek a refund. Someone to whom the IRS directs rather intimidating, if standard, demand letters as "a person required to collect, account for and pay" a referenced tax should not be required to guess at his peril whether or not he may ultimately be determined not to be responsible for such payment.

As the Court in *Brodey* noted, there are no "convincing reasons why [the government] should not refund amounts erroneously paid to the people who paid them." *Brodey*, 788 F.Supp. at 48. The court believes that § 1346(a)(1) does not mandate otherwise. One must also question the prudence of the apparent determination of the government relentlessly to pursue at public expense a case involving a relatively nominal amount in the particular circumstances presented.

The government elicited testimony to rebut plaintiff's claim that he reasonably believed he was responsible for the taxes of 5727 Bar and argued to the jury that any such belief was not reasonable. The case was submitted to the jury on the reasonable belief theory.

The recent contention of the government in its brief that it was not afforded an opportunity to object to the reasonable belief instruction outside the presence of the jury is astounding. During the first day of trial, one business day after the government belatedly filed its pretrial submissions and outside of the presence of the jury, the court reviewed with counsel the proposed jury instructions. This endeavor consumed 22 pages of the trial transcript.

The court expressly referenced *Martin* and *Brodey* and made clear that it would charge the jury on reasonable belief. The response of counsel for the government was "Your Honor, is your definition of reasonableness going to be an objective standard?" The court responded "Yes" and again specifically referenced the test set forth in *Brodey*.

Before the charge and out of the presence of the jury, the court reiterated that it would instruct the jury that plaintiff may recover "if he believed he was personally liable for the payment, the belief was objectively reasonable and he paid only because of that belief." The court also provided counsel with a copy of a proposed verdict form reflecting the reasonable belief standard. The court then asked counsel if they had "any questions, suggestions or problems." Counsel for the government responded "Your Honor, the Government is satisfied with these instructions, and with these verdict forms."

After the charge and before the commencement of deliberations, the court asked counsel if there was anything they then wished to raise. Counsel for the government did not ask for a sidebar or manifest any objection. His response to the court's inquiry was "Nothing from the defense, your Honor."

The government alternatively argues that it is entitled to judgment notwithstanding the verdict under the reasonable belief standard. In an official IRS communication, plaintiff was told that he was "a person required to collect, account for and pay" the taxes owed by 5727 Bar of which he was the current owner. He was told that "your property" could be seized for nonpayment and that a notice of levy could be served "on your employer for salary or wages." It is doubtful that anyone might reasonably believe that

---

5. The government attempts to distinguish *Brodey* on the ground that unlike plaintiff in the instant case who is "an experienced businessman," the plaintiff in *Brodey* was "financially unsophisticated." Plaintiff owned two bars. It is doubtful that anyone who observed him in court would conclude that he is a sophisticate. He is no more of "an experienced businessman" than the plaintiff in *Schoenherr* who operated five restaurants and owned a basketball team.

5727 Bar Inc. would have an "employer." There is no evidence that the IRS attempted to disabuse plaintiff of the notion he was responsible for the taxes in question. The court is satisfied that a reasonable jury could find that plaintiff in the circumstances presented reasonably believed that he was responsible for the taxes in question and paid them only for that reason.

Accordingly, the government's motions will be denied.